AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>**NICHOLAS QUINTON HANSON**<br><br>*Defendant(s)* | )<br>)<br>) Case No.: 8:23-mj-1128-MRM<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __JANUARY 30, 2023__ in the county of __POLK__ in the __MIDDLE__ District of __FLORIDA__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(G)(1) | FELON-IN-POSSESSION OF AMMUNITION |

This criminal complaint is based on these facts:

X Continued on the attached sheet.

_____
*Complainant's signature*

JEFFREY BURT, SPECIAL AGENT, ATF
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 2/6/2023

_____
*Judge's signature*

City and state:     TAMPA, FLORIDA            MAC. R. MCCOY, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Jeffrey Burt of the Bureau of Alcohol Tobacco, Firearms and Explosives (ATF), being duly sworn, state the following:

### I.     Introduction and Agent Background

1. I have been a Special Agent with ATF for over fifteen years. In connection with my official duties and as and as defined by 18 U.S.C. § 2510(7), I am "an investigative or law enforcement officer of the United States," empowered by law to enforce violations of federal criminal laws, and as defined by Federal Rule of Criminal Procedure 41(a)(2)(C), a "Federal law enforcement officer" engaged in enforcing criminal laws and authorized to request a search warrant.

2. I have twenty-eight years of law enforcement training and experience consisting of, but not limited to, earning a Bachelor of Science Degree in the field of Criminal Justice from Florida State University; successfully completing the Lively Police Academy, the Federal Law Enforcement Training Centers Criminal Investigator Training Program, and the ATF Special Agent Basic Training (SABT); and working as a Police Officer with the Tallahassee Police Department, an investigator with the Florida State Fire Marshall's Office, a Special Agent with the Florida Department of Law Enforcement, and finally a Special Agent with ATF.

3. While employed in these positions, I received additional training in subject matters specific to each position's requirements in furtherance of law enforcement duties. In connection with my official duties, I investigate a variety of criminal violations of federal laws, including the investigation of violent crimes and

other firearms-related offenses such as armed robberies. Furthermore, during these and other investigations, I have seized cellular telephones, reviewed crime scene evidence, conducted arrests, reviewed cell site data, and consulted with other agents and law enforcement officers who have seized and/or reviewed evidence from cellular telephones. I am also an ATF firearms and ammunition specialist, which means that I am authorized by ATF to conduct examinations and make determinations about firearms and ammunition. As such, I have given opinion testimony in federal court regarding my determinations about firearms and ammunition.

4.  I submit this affidavit in support of a criminal complaint against Nicholas Quinton HANSON. As set forth herein, I have probable cause to believe HANSON has committed a violation of 18 U.S.C. § 922(g)(1), felon in possession of ammunition.

5.  I am familiar with the facts and circumstances of this investigation either as a result of my personal involvement or as a result of information made available to me from other sources, including witnesses, law enforcement personnel, or investigative reports. This affidavit is intended only to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II. The Investigation

6.  On January 30, 2023, at approximately 3:44 p.m., the Lakeland Police Department received reports of a shooting in the area of Iowa Avenue and Plum

Street in Lakeland. Officers responded to the crime scene in the 900 block of Iowa Avenue and began rendering first aid to the victims and securing the crime scene. Officers determined several shooting victims had been transported to the Lakeland Regional Hospital in two private vehicles. Other victims were transported via Polk County EMS. The investigation revealed eleven male victims were struck by bullets, two remain in critical condition with life threatening injuries.

7. A review of video surveillance footage and witness testimony indicated a blue Nissan Altima approached the duplexes while several individuals were seated outside playing cards. Several suspects occupying the Nissan began discharging firearms toward the individuals at the complex. The Nissan fled north on Iowa Avenue. Lakeland Police Crime Scene Technicians responded to the scene and collected items of evidence to include, 9-millimeter, .40 caliber, and 5.56 millimeter spent cartridge casings suspected to have come from the firearms in the Nissan.

8. On January 31, 2023, a citizen contacted the Lakeland Police Department who stated they observed a vehicle matching the description of the suspect vehicle which had been disseminated through the media. Lakeland Police personnel responded to the area of 8th Street and Virginia Avenue in Lakeland and observed the vehicle loaded on a flatbed tow truck. The tow truck driver stated a subject named Booker Green had contacted him the previous afternoon and requested the vehicle be taken to a suspected chop shop for repair. The driver explained he picked up the vehicle that evening (1/30/23) from 3215 Baird Avenue

3

in Lakeland and drove to his house with the intention to take the vehicle to the repair shop the next morning. On January 30, 2023, he drove the tow truck with the Nissan on the bed to the area of 8th Street and Virginia Avenue where he was going to repair a vehicle for someone else. The tow truck driver provided Lakeland Police the phone number for the subject that placed the call to have the vehicle towed, which was identified as the number for Booker Green. In addition, the Lakeland Police Department received an anonymous tip stating the vehicle had been dumped at 3215 Baird Avenue and Booker Green was observed cleaning the vehicle out.

9. The vehicle was seized and transported to the Lakeland Police Department's Crime Scene Unit for further analysis. A spent Hornady, .40 caliber cartridge case was recovered from the exterior front windshield cowl of the Nissan where the windshield wipers are located. The vehicle was processed for latent evidence.

10. On February 1, 2023. Lakeland Police detectives interviewed WITNESS 1 who stated he or she was contacted by a female named "Marinda" who asked him or her to have the car towed from the apartment complex at 3215 Baird Avenue because it was inoperable. WITNESS 1 explained that he or she had used the tow truck driver in the past and he or she (WITNESS 1) usually makes money from the transactions. WITNESS 1 was arrested for Tampering with Evidence and was transported the Polk County Jail. WITNESS 1 was subsequently released on bond.

11. On February 2, 2023, WITNESS 1 voluntarily returned to the Lakeland Police Department for an additional interview. WITNESS 1 was late to the meeting and stated it was because he or she was together with HANSON. WITNESS 1 stated HANSON spoke about his plans to go to Winter Haven to get a gun from a subject named Alex Greene and WITNESS 1 thought it might be the firearm used in the shooting. WITNESS 1 stated HANSON referred to it as "SRT" possible referring to a device placed on pistols to convert them to fully automatic. WITNESS 1 stated HANSON admitted involvement in the shooting along with a subject he referred to as "Lil Stuna". WITNESS 1 stated HANSON was upset that the tow truck driver did not take the Nissan to the shop immediately and asked WITNESS 1 if the police brought his name up. WITNESS 1 recalled getting telephone calls from Katiara Howard after the shooting, asking him or her to have the Nissan towed from 3215 Baird Avenue. WITNESS 1 stated he or she spoke with HANSON as well who requested the same. WITNESS admitted to having lied earlier when he or she said he or she had been called by Marinda, when in fact he or she had been called by Howard. WITNESS 1 is a former confidential human source (CHS) for the Federal Bureau of Investigation (FBI). The FBI de-activated WITNESS 1 as a CHS in or around March 2022 because of lack of contact.

12. HANSON and Howard are known to associate together and have a child together. A review cellular call records shows several contacts between HANSON and Alex Greene prior to and the day of the shooting.

13. A review of several business surveillance videos in the area of the shooting indicate the suspect vehicle fled in a northern direction from the shooting scene, possible taking Lake Parker Drive to Lakeland Hills Drive. ATF agents located video surveillance footage from a residence located on Baird Avenue just north of the entrance to the Jasmine Apartments located at 3215 Baird Avenue where the suspect vehicle was left after the shooting. The video captured the blue Nissan Altima driving south bound on Baird Avenue approximately 12 minutes after the shooting.

## ATF Laboratory Analysis

14. On January 31, 2023, ATF agents took possession of 21 spent casings collected from the shooting scene which were transported to the ATF Forensic Science Laboratory in Washington D.C for DNA analysis.

15. On February 3, 2023, I was contacted by an ATF Forensic Biologist who reported a Combined DNA Index System (CODIS) hit pertaining to HANSON to a profile generated by swabbing two 9-millimeter cartridge cases together from the above-described January 30th shooting (ATF Exhibit 17 (Lakeland Exhibit 21, a Blazer 9-millimeter spent shell casing) and ATF Exhibit 18 (Lakeland Exhibit 41, a Winchester 9-millimeter spent shell casing)). ATF Lab biologists routinely swab cartridge cases in pairs after considering case information, caliber, and a visual inspection of the headstamp and firing pin impression to try and reduce the overall number of samples and increase the amount of DNA recovered per sample.

16.   I requested lab personnel compare the CODIS hit to previously submitted buccal swabs I obtained from HANSON during a prior shooting investigation in which HANSON was a suspect after firing several rounds at Lakeland Police officers in the area of Gilmore Avenue in Lakeland, just two blocks east of Iowa Avenue.

17.   The Likelihood Ratio value supporting inclusion of HANSON as a major contributor to the mixture profile obtained from the two spent casings is in the "Very Strong Support" category of the verbal scale. The "Very Strong Support" category corresponds to Likelihood Ratios greater than 1 million, and is the strongest possible support category.

18.   The spent cartridge casings were also sent to the ATF, Firearms Operations Division, NIBIN Sites Operations Branch for analysis. ATF Specialist Alicia Lynch reported ATF exhibits 17 and 18 appeared to have the same class characteristics indicating they were fired from the same firearm.

19.   I reviewed crime scene video, crime scene pictures and evidence diagrams which documented the location of each recovered spent cartridge case. Video evidence depicts the blue Nissan Altima traveling north on Iowa. At no time does the Nissan stop or slow down. According to video evidence as well as the location of spent shell casings, it appears shots were fired from both sides of the vehicle as it passed.

20.     ATF Exhibit 17 and ATF Exhibit 18 were both located on the eastern edge of Iowa Avenue and in close proximity to each other. After reviewing crime scene diagrams, photographs, lab reports and videos of the shooting, I believe ATF Exhibits 17 and 18 were loaded together in the same magazine and fired from the same firearm.

21.     I conducted research on the ATF Exhibit 17 (Blazer, 9-millimeter casing) and ATF Exhibit 18(Winchester 9-millimeter casing), to include information imprinted on the head of the casing commonly referred to the "headstamp/". I contacted Ed Harrison with Winchester Ammunition and provided him information from the Winchester spent cartridge casing. Harrison indicated the casing was manufactured in Mississippi in 2022. Based on my research, the Blazer 9-millimeter casing was manufactured in Idaho.

22.     An NCIC criminal history query identified several prior felony convictions for HANSON to include: Burglary/Grand Theft on 8/12/2011; Burglary/Grand Theft on 9/30/2011; Retaliation Against a Victim/Witness on 3/14/2014; and a federal conviction on 1/15/2015; case number: 8:14-cr-342-T-36EAJ, for Felon in Possession of a Firearm/Ammunition originating in the Middle District of Florida.

23.     The federal conviction was related to a shooting incident that occurred in the City of Lakeland on May 10, 2014. The shooting occurred at a gas station when HANSON, who was identified by a witness, fired several shots

from the back seat of a vehicle from a 9-millimeter handgun into a crowd of individuals before fleeing the scene in the vehicle.

24. I conducted a query of the State of Florida Office of Executive Clemency and confirmed they had no record of HANSON's civil rights, specifically his right to possess a firearm, having been restored, and no record of any pending request for restoration of rights.

25. Based on the forgoing information, I submit that probable cause exists to believe that Nicholas Quinton HANSON committed the offense of possessing in or affecting interstate commerce, ammunition which had been shipped or transported in interstate commerce in violation of 18 U.S.C. § 922(g)(1)). I respectfully request that a criminal complaint be issued for his arrest.

_____
Special Agent Jeffrey Burt
Bureau of Alcohol, Tobacco, Firearms and Explosives

Affidavit submitted by email and attested to me as true and accurate via telephone consistent with Federal Rules of Criminal Procedure 4.1 and 4(d), this _6th_ day of February 2023.

_____
MAC R. MCCOY
United States Magistrate Judge